**IN THE COURT OF APPEALS OF IOWA**

No. 21-0224
Filed May 12, 2021

**IN THE INTEREST OF I.B., B.B., A.B., and T.B.,**
**Minor Children,**

**N.B., Father,**
     Appellant,

**T.B., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Buena Vista County, Mary L. Timko, Associate Juvenile Judge.

A father and mother separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**

T. Cody Farrens of Vriezelaar, Tigges, Edgington, Bottaro, Boden & Lessman, L.L.P., for appellant father.

Molly Vakulskas Joly of Vakulskas Law Firm, P.C., Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Thomas E. Gustafson of Gustafson Law Firm, Denison, attorney for minor children.

Lisa K. Mazurek, Cherokee, guardian ad litem for minor children.


Considered by Bower, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A father and mother separately appeal the termination of their parental rights to three of the parties' children.[1]  Each challenges the statutory grounds for termination and argues termination is not in the best interests of the children.  The father argues the children were provided ineffective assistance of counsel.

## I.    Background Facts and Proceedings

The parties' relationship began in 2003, and the oldest child was born in 2004.  The parties married after the birth of the oldest child and had two more children during the marriage.  The Iowa Department of Human Services (DHS) became involved with the family in 2012, following an incident of domestic violence.  The father became angry and destroyed a door with an axe.  The incident was witnessed by the father's child from a prior relationship.  This was not the first incident of domestic violence between the parties.  The mother requested multiple no-contact or protective orders during the relationship.  In 2012, the parents began divorce proceedings, and a contentious struggle for custody of the children began.[2]  The parties eventually stipulated to shared custody.  The parties had another child in 2013.  The DHS case closed in September 2014.

The parties again came to the attention of DHS in December 2017, following a report the father used an unknown substance and wielded a loaded firearm while under the paranoid belief people were attempting to break into the home.  All four

---

[1] The parents' rights to the oldest child were not terminated.  Neither parent appeals the district court's order regarding the oldest child.
[2] The mother made multiple abuse allegations, including sexual-violence allegations, against the father.  The father denies the sexual-violence claims and explains his allegedly violent conduct was responsive to the mother "poking" at him.

of the parties' children were in the father's home during the incident. The children reported that the father engaged in paranoia-related conduct on more than one occasion. Services for the family began in January 2018, and the children were adjudicated in need of assistance in June. They were then placed with their mother following a dispositional hearing in July. The mother was hesitant to allow supervised visitation with the father and sometimes refused to cooperate. She eventually removed the children from school out of fear the father would take them from school to his home. The older two children both had mental-health issues for which they continue treatment, and the younger two children began to demonstrate similar behaviors. The children were removed from the mother's home in December 2018 after she allowed the oldest child to babysit the younger children following an incident where the older child made violent threats against the entire family.

The father was prescribed pain medication and received a medical marijuana card to treat pain related to a work injury. Over the course of proceedings, the father supplemented his treatment with non-medically issued marijuana, methamphetamine, and amphetamines (at least one use of methamphetamine and other uses of Adderall). The father also abused the opiates he was prescribed by failing to take them in the prescribed doses, taking more than the prescribed dose because of his heightened pain level when the children were in his care. The mother engaged in therapy but has consistently refused to acknowledge her role in the family's situation. She allowed men to move into the home she shared with the children resulting in emotional strain when the

relationships ended, allowed the children to be supervised by inadequate caregivers, and escalated dysfunctional situations in the home.

The termination trial began in October 2020 and was completed in December due to the COVID-19 pandemic. The father's rights were terminated pursuant to section 232.116(1)(d) and (i) (2020) as to all three children, and additionally as to paragraph (f) as to the youngest two children. The mother's rights were terminated pursuant to section 232.116(1)(d), (f), and (i). They separately appeal.

## II.　Standard of Review

We review terminations of parental rights de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). The State must prove the grounds for termination by clear and convincing evidence, which "exists 'when there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). Our paramount "concern is the best interest of the child[ren]." *Id.*

## III.　Analysis

We use a three-step process to review termination of parental rights. *D.W.*, 791 N.W.2d at 706.

> First, the court must determine if a ground for termination under section 232.116(1) has been established. If a ground for termination is established, the court must, secondly, apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights. Third, if

the statutory best-interest framework supports termination of parental rights, the court must consider if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights.

*Id.* at 706–07 (citations omitted). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *Id.* at 707. An appellate court may affirm any statutory provision for termination if it was raised at the district court, even if the district court did not rely on that ground for termination. *M.W.*, 876 N.W.2d at 221. When examining the best interests of the children, the court "shall give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). The statutory exceptions to termination are permissive, meaning a court may exercise discretion in determining "whether to apply the factors in [section 232.116(3)] to save the parent-child relationship." *M.W.*, 876 N.W.2d 225.

The parents' rights were terminated to all three children pursuant to Iowa Code section 232.116(1)(d) and (i). The mother's parental rights were also terminated to all three children, and the father's rights to the two youngest children, pursuant to section 232.116(1)(f). In order to terminate, the State must prove one of the following:

> d. The court finds that both of the following have occurred:
> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omission of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

. . . .

f. the court finds that all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

. . . .

i. The court finds that all of the following have occurred:

(1) The child meets the definition of a child in need of assistance based on a finding of physical or sexual abuse or neglect as a result of the acts or omissions of one or both parents.

(2) There is clear and convincing evidence that the abuse or neglect posed a significant risk to the life of the child or constituted imminent danger to the child.

(3) There is clear and convincing evidence that the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time.

Iowa Code § 232.116(1)(d), (f), (i).

1.     Mother

In order to terminate the mother's rights pursuant to Iowa Code section 232.116(1)(f), the State must prove all four elements by clear and convincing evidence.  The children were born between 2004 and 2013, meaning all were over the age of four at the 2020 termination trial.  *See id.* § 232.116(1)(f)(1).  The children were adjudicated in need of assistance following a hearing in June 2018.  *See id.* § 232.116(1)(f)(2).  The children were removed from their father's home in June 2018 and from their mother's home in December 2018.  The oldest two children had a trial home placement with the father for about six weeks in 2020.

There was no trial home placement with the mother for any child. At the time of the termination hearing, the children had been removed from the mother's home for twenty-two months and had a trial home placement for only six weeks. Because the children had been removed from a familial placement for at least twelve of the last eighteen months, the third element is satisfied. *See id.* § 232.116(1)(f)(3).

The final element of section 232.116(1)(f) requires a finding, by clear and convincing evidence, that the children could not be returned to the parental home. *Id.* § 232.116(1)(f)(4). The court evaluates whether the children could be returned to the parents "at the time of the hearing." *A.M.*, 843 N.W.2d at 111. The mother participated in services including therapy, Family Centered Services, and visitation. However, the mother never acknowledged her inability to "provide for all the needs of her children, including their mental health, academic[s], medical needs, and provide a home free from abuse and neglect." The mother testified her only role leading to DHS intervention was leaving the oldest child to care for the three younger children. We do not minimize that conduct, particularly because the mother was told to not place the oldest child in the role of a caregiver. At the time of the termination hearing, the mother acknowledged she made a bad choice. Yet, the mother has never addressed her role in escalating dangerous situations for the children. The mother removed the children from school in 2018 out of fear the father would "get" the children. She made one child so terrified, the child had to be carried into the building and was angry and disengaged in class. After one child engaged in self-harm by cutting, the mother supplied the child with a razor. The mother continuously blamed the father, his substance abuse, and anger for the family's situation. Because the mother is still unable to provide for the mental-

health and behavioral needs of the children, despite the services offered to the family, we agree with the district court that the children could not be returned to her care at the time of termination, in satisfaction of the fourth element of section 232.116(1)(f).

The mother also argues that termination is not in the best interests of the children. In considering whether termination is in the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.M.*, 843 N.W.2d at 112. The parents were granted an additional six months to work toward reunification in November 2019. Proceedings were then extended due to the COVID-19 pandemic. The children need permanency now. The children were removed from the mother's home in December 2018 and have had no trial home placements with her. The mother never moved past supervised visits. The children are all doing well in their current placements. The children's mental-health needs are being met and growth has been prioritized in the current placements. Accordingly, we agree with the district court that termination of the mother's parental rights is in the children's best interests.

2.    Father

The undisputed facts of this case related to the age of the children and child-in-need-of-assistance adjudication lead to satisfaction of the first two elements of section 232.116(1)(f) as to the father.  The children were removed from their father's home in June 2018 and from their mother's home in December 2018.  The oldest two children had a trial home placement with the father for about six weeks in 2020.  The durational element in section 232.116(1)(f) is satisfied because the children were removed from parental custody "for at least twelve of the last eighteen months."  Accordingly, the third element is satisfied as to the father.

We now turn to the fourth element and consider whether the children could be returned to the father at the time of termination.  Iowa Code § 232.116(1)(f)(4).  The two older children are being treated for mental-health-related issues.  Both have had outbursts that have resulted in threats or actual violence.  One child has engaged in self-harm. Both require medication.  But when in the father's care, that medication was withheld.  The father testified he would not make that choice again without consulting the children's doctors.  But the father has his own issues with prescription, and nonprescription, drugs.  The father's testimony reveals that he takes prescribed pain medications but does not follow the dosage directions.  At times, he takes more medication than directed, meaning that he runs out of medications before the end of the month.  The father testified he is more active when the children are in his care and, because of the resulting pain, he takes additional pain medication.  He also testified that his outbursts of anger, some of which have resulted in violence, happen when he is in pain.  The father's inability to maintain the proper dosage of his medication creates an unsafe situation at

home. Furthermore, although the father has a medical marijuana card, he does not use it because it is cost-prohibitive. Instead, he buys marijuana from street dealers. The father even testified that he smoked marijuana the morning he testified at trial. The father has no prescription history for amphetamines, yet he tested positive for the substance while the oldest children were in his care during the trial home placement. We acknowledge that the father has physical pain that has to be managed. But his history of self-medicating is dangerous for the children. Accordingly, we find the children could not be returned to the father at the time of termination.[3] *See id.*

The father also argues termination is not in the children's best interests. We acknowledge the father and children love each other. Even so, we cannot force the children to wait for the father to learn how to properly medicate for maintenance of his physical pain. It is unsafe to place the children with a parent who uses nonprescription medications attained from street dealers or other unlicensed persons. Even though the father testified he would not remove the children from prescribed medications, his own history of misusing medication is a problem. The district court was "not reassure[d] . . . [the father] would be diligent in making sure the children in his care would follow medication protocol," and neither are we. When asked, the second oldest child said she would only return to the father's care if he was able to refrain from alcohol and nonprescribed medications. The father testified it would be difficult for him to negotiate his pain without marijuana. The

---

[3] The juvenile court did not terminate the father's parental rights to the second-oldest child pursuant to section 232.116(1)(f). However, because section 232.116(1)(f) was raised before the district court, we may rely on it to affirm. *See M.W.*, 876 N.W.2d at 221.

father's home environment during the trial home placement revealed that it was difficult for the father to provide for his children, his live-in girlfriend, their new baby, and the girlfriend's children. The children need permanency now. Because the father has been unable to provide a safe, stable home for the children and continues to both misuse his prescription pain medication and supplement those medications with street marijuana and nonprescribed medications, we agree with the district court that the children could not be returned to the father at the time of termination. *See id.*

3. Ineffective Assistance

The father alleges the children were provided ineffective assistance of counsel by their appointed attorney. The father argues the children's counsel was ineffective in failing to present any evidence at trial and maintain adequate contact with the children. The father insists the children's wishes were not presented to the court and, therefore, were not considered.

The father is correct that children are to be represented by counsel and a guardian ad litem (GAL) in proceedings pursuant to Chapter 232. *Id.* § 232.89(1), (2), (4). The court may appoint one person to serve as counsel and GAL or bifurcate the appointments among two persons. *Id.* § 232.89(4). The GAL "represent[s] the interests of a child in any judicial proceeding to which the child is a party." *Id.* § 232.2(22). In this case, the court chose to bifurcate those roles, appointing two separate attorneys. The father takes no issue with the GAL's performance.

This court has consistently held that one parent may not assert the other parent's parental rights because they have no standing to do so. *See, e.g., In re*

*C.T.*, 18-2199, 2019 WL 1055897, at *1 (Iowa Ct. App. Mar. 6, 2019). We find that rule equally applicable to these facts. The children had legal counsel and a GAL. If the GAL or children felt the children's rights were inadequately or ineffectively represented, the GAL could have raised that issue on behalf of the children. Our finding today aligns with the statutory procedure for providing notice to the court if there is a conflict between a child's wishes and the legal interests of the child diverge. Iowa Code § 232.89(2), (4). Accordingly, we will not address the issue further.

## IV. Conclusion

We affirm termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**